Sharon Flanagan, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 13, 1979, before Judges MENCER, DiSALLE and MACPHAIL, sitting as a panel of three.

*Stuart A. Cilo,* for petitioner.

*John T. Kupchinsky,* Assistant Attorney General, with him *Edward G. Biester, Jr.,* Acting Attorney General, for respondent.

OPINION BY JUDGE DISALLE, October 31, 1979:

Sharon Flanagan (Claimant) appeals the decision of the Unemployment Compensation Board of Review (Board) reversing a referee's decision, and denying benefits by reason of its determination that Claimant was discharged for willful misconduct within the meaning of Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). In addition to the question of willful misconduct, we are presented with the issue of whether the Board acted properly in agreeing to reconsider its decision.

Claimant was discharged from her work on December 6, 1977, for accumulating three unexcused absences during her probationary period with Danville Cabinet Industries, Inc. (Employer). She filed for benefits the same day. On December 17, 1977, the Bureau of Employment Security (Bureau) denied benefits, relying on a copy of Employer's separation notice which indicated that Claimant had violated a company rule by amassing the three unexcused absences. Subsequent to appeal of the Bureau's determination, a

hearing was conducted by a referee at the Bureau's office in Milton, Pennsylvania, at which time the Claimant *alone* appeared and testified.

Noting Employer's absence and the fact that an employer bears the burden of showing that a claimant's discharge was precipitated by willful misconduct, the referee reversed the Bureau and awarded benefits. The referee found that Claimant was never warned that her job was in jeopardy due to her absence from work, and that each time she was absent, Claimant attempted to notify Employer but was unable to do so. The referee then concluded that Employer failed to sustain its burden of proof regarding willful misconduct.

In its petition for appeal from the referee's decision, Employer reviewed Claimant's work history, including her three unexcused absences, and noted that a posted plant rule treated such conduct as an offense punishable by discharge. Employer also stated that it was unfair to conduct a hearing on the matter in Milton rather than at Employer's place of business in Danville, Pennsylvania, and that it would be happy to make its case in Danville.[1]

The Board affirmed the referee, concluding that Employer had failed to sustain its burden of proof regarding a showing of willful misconduct. The Board noted in particular that while Claimant admitted to the three absences, her uncontradicted testimony "proved that she attempted to contact her employer to report off on those days."

In requesting the Board to reconsider its decision, Employer reiterated the reason for Claimant's discharge and added that on the dates of Claimant's absences, Employer's place of business was staffed and the phones were in operating condition. Employer

---

[1] Danville is situated approximately fifteen miles from Milton.

concluded, "Again, I appeal requesting a hearing for us no further [sic] away from Danville than *Milton* so that we can give our testimony under oath." (Emphasis supplied.) The Board thereupon vacated its own decision and ordered the case reopened.

Another hearing was conducted in Milton and, based on further evidence provided by Employer, the Board reversed the referee's order (which it initially affirmed) and declared Claimant ineligible for benefits. Specifically, Claimant was found to have disregarded Employer's rule regarding unexcused absences, a rule of which she should have been aware.

Claimant initially challenges the Board's action in granting Employer's request for reconsideration. Citing the Board's regulation found at 34 Pa. Code §101-.111,[2] Claimant argues that no "good cause" exists to warrant the Board's reconsidering the matter. With this we agree. While few cases have interpreted this regulation, we believe that before the Board agrees to

---

[2] This regulation provided as follows:

(a) Within ten days after the issuance of the decision of the Board, as may be determined by the provisions of §101.102 of this title (relating to form and filing of application for further appeal from decision of referee), any aggrieved party may request the Board to reconsider its decision and if allowed, to grant further the opportunity to do the following:

(1) Offer additional evidence at another hearing.

(2) Submit written or oral argument.

(3) Request the Board to reconsider the previously established record of evidence.

(b) Such requests will be granted only for *good cause* in the interest of justice without prejudice to any party. The parties shall be notified of the ruling of the Board on each such request. The request for reconsideration and the ruling of the Board shall be made a part of the record and subject to review in connection with any further appeal to the Commonwealth Court. (Emphasis supplied.)

This regulation was amended July 14, 1978.

reconsider its own decision there must appear of record some reason to support this exercise of discretion. A thorough review of the record has failed to yield any satisfactory reason for granting reconsideration.

There is, of course, Employer's suggestion in its appeal from the referee's decision that it was "unfair" to conduct a hearing at the Bureau's office in Milton, situated approximately fifteen miles from Employer's place of business at Danville. However, Employer's specific request in its "petition" for reconsideration that a hearing be convened no farther away from Danville than Milton demonstrates the utter untenability of this position.

The Employer has asserted no reason for its failure to appear at the first hearing.[3] Obviously, it simply chose not to do so. We strongly condemn such an arbitrary and cavalier disregard of the procedures framed for expeditious disposition of unemployment compensation claims, procedures which inure to the benefit of all concerned. We believe the Board abused its discretion in granting a reconsideration of its decision and that the Board's order reversing the referee must itself be reversed.

In examining the record as it existed at the time of the Board's first consideration of the matter, we find sufficient evidence to support the referee's decision and the Board's initial affirmance thereof. Claimant's own uncontroverted testimony indicates that her conduct lacked the necessary element of willfulness. Further, we reiterate that an employer bears the burden of proving that a claimant was discharged for willful

---

[3] There is no suggestion by the Employer that it did not receive timely notice of the first hearing. See *Baird v. Unemployment Compensation Board of Review*, 30 Pa. Commonwealth Ct. 118, 372 A.2d 1254 (1977). The referee stated in his decision as follows: "Although duly notified in advance of the hearing, the employer did not appear to testify."

misconduct. Employer failed to sustain this burden. We have no difficulty in concluding, therefore, that Claimant is entitled, as a matter of law, to receive benefits.

ORDER

AND Now, this 31st day of October, 1979, the order of the Unemployment Compensation Board of Review, dated June 27, 1978, reversing the referee's award of benefits to Sharon Flanagan is hereby reversed, and the case is remanded to the Bureau for a computation of benefits.